UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**JS-6**

CIVIL MINUTES – GENERAL

| Case No. | 2:24-cv-07494-MRA-MAR | Date | July 29, 2025 |
|---|---|---|---|
| Title | *Corey Landis v. Lionbridge Technologies, LLC, et al.* | | |

| Present: The Honorable | MONICA RAMIREZ ALMADANI, UNITED STATES DISTRICT JUDGE |
|---|---|

| Melissa H. Kunig | None Present |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Present | None Present |

**Proceedings:** **(IN CHAMBERS) ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [23]**

Before the Court is Defendant Lionbridge Technologies, Inc.'s Motion for Summary Judgment (the "Motion"). ECF 23. The Court read and considered the moving, opposing, and reply papers.[1] ECF 24, 27, 32, 33, 34, 35, 36. The Court deemed the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); L.R. 7-15. For the reasons stated herein, the Court **GRANTS** the Motion.

## I. BACKGROUND[2]

On July 23, 2024, Plaintiff Corey Landis ("Plaintiff" or "Landis") filed this case against

---

[1] Defendant objects to Plaintiff's Opposition as untimely. ECF 37. The Court agrees that Plaintiff did not comply with the Court's Civil Trial Order, which explains that oppositions to motions for summary judgment must be filed and served no later than 28 days before the hearing date. ECF 14 at 7. Defendant's Motion was noticed for hearing on June 23, 2025, which meant that Plaintiff's Opposition was due on May 26, 2025. Plaintiff's Opposition was filed a day late. Although the Court may decline to consider an untimely filing, L.R. 7-12, it does not exercise this authority here because the delay did not appreciably prejudice Defendant's ability to file its Reply.

[2] The Court has reviewed and considered all evidence in the record. Unless otherwise indicated, the facts set forth in this section are taken from Defendant's Response to Statements of Genuine Dispute ("RSGD"), which incorporates the Statement of Uncontroverted Facts ("SUF") and Statement of Genuine Disputes of Material Fact ("SGD"). District courts are not required to make findings of fact on a motion for summary judgment. Fed. R. Civ. P. 52(a)(3). Instead, the court "may assume that the material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the Statement of Genuine Disputes and (b) controverted by declaration or other written evidence filed in opposition to the motion. The Court is not obligated to look any further

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:24-cv-07494-MRA-MAR | Date | July 29, 2025 |
|---|---|---|---|
| Title | *Corey Landis v. Lionbridge Technologies, LLC, et al.* | | |

Defendant Lionbridge Technologies, LLC ("Defendant" or "Lionbridge") in Los Angeles County Superior Court, seeking damages and waiting time penalties under California Labor Code § 203 for nonpayment of wages. ECF 1 ¶ 1, Ex. A ("Compl."). Landis is an actor who performed as a voice-over actor for a video game. Compl. ¶¶ 1, 7. Defendant Lionbridge Technologies, LLC ("Defendant" or "Lionbridge") is a company "engaged in the product of advertising gaming materials and in the marketing of gaming products." *Id.* ¶ 2. Defendant removed the case to federal court on September 3, 2024. ECF 1.

    Landis describes himself as an "independent voice-over artist" who worked "a myriad of gigs." ECF 35 (RSGD) 5. Landis has theater, acting, speech, and vocal training. *Id.* 6. Landis identifies character voice acting, accents, dialects, impressions, and voice matches as skills of his. *Id.* 7. In 2022 and 2023, Landis worked on 35-45 paid acting gigs each year, in addition to the gigs at issue in this case. *Id.* 8. Landis' other gigs from 2022 and 2023 included film, television, theater, commercials, internet acting, corporate videos, and other voice-over acting gigs. *Id.* 9. Landis was engaged in an independently established acting career. *Id.* 10.

    Between February 14, 2022, and August 8, 2023, Lionbridge hosted 18 sessions for its "Client" during which one of its Client's voice-over actors, Landis, portrayed Welt Yang ("Welt"), a character in the English language version of the Client's videogame, *Honkai: Star Rail*. *Id.* 3. Lionbridge's involvement with Landis and his performance as Welt was unique and only incidental to what Lionbridge does. *Id.* 21. Lionbridge's usual course of business is providing translation and localization services to customers throughout the world. *Id.* 1. "Localization" refers to the adaptation of content to be usable in a specific region or country. *Id.* Lionbridge does not employ, and has not employed, voice-over actors in its usual course of business. *Id.* 2.

    Landis auditioned for and was selected by Lionbridge's Client to portray Welt before Landis ever recorded at one of Lionbridge's studios. *Id.* 11. Lionbridge was not involved in the auditioning or selecting of Landis for the role. *Id.* Lionbridge did not have the authority to replace Landis as the voice actor for Welt. *Id.* 12. Landis portrayed Welt using a script written and translated by Lionbridge's Client. *Id.* 13. Lionbridge was not involved in drafting the script or translating it from Chinese to English for Landis' use. *Id.* All of the individuals who directed Landis when he portrayed Welt were selected by Lionbridge's Client. *Id.* 14. All of the individuals who directed Landis were paid in the same manner as Landis—ultimately by Lionbridge's Client. *Id.* 15. In portraying Welt, Landis interpreted the context and background

---

in the record for supporting evidence other than what is actually and specifically referenced" in the SUF, SGD, and RSGD. L.R. 56-4; *see also* Fed. R. Civ. P. 56(c).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:24-cv-07494-MRA-MAR | Date | July 29, 2025 |
|---|---|---|---|
| Title | *Corey Landis v. Lionbridge Technologies, LLC, et al.* | | |

of each scene given to him by the Client's director and changed how he delivered his lines depending on the scene, including the energy level, tonality, intensity, and volume. *Id.* 16. The manner in which Landis portrayed Welt in a battle scene would be different from how he portrayed Welt in a romantic scene. *Id.* 17.

Each of Landis' recording sessions hosted by Lionbridge was four hours or fewer, and all but five lasted fewer than two hours. *Id.* 4. Landis was guaranteed a two-hour minimum of pay for each session and was paid the hours scheduled for the recording session, even if the session did not last the total amount of time allotted. *Id.* 29. Related to his voice-acting work as Welt, Landis signed a Community Services Agreement ("CSA") with Lionbridge via a Community Data Base ("CDB"). *See id.*; ECF 23-4 (Whiting Decl.) ¶ 8, Exs. 1 ("CSA"). Landis used the CDB to submit purchase orders and invoices so that he could be paid. Whiting Decl. ¶ 8. The CSA explicitly states that "Supplier [here, Landis] will be considered an independent contractor and neither Supplier nor Supplier Personnel will be considered an employee, agent or partner of Lionbridge or any of its customers under the provisions of this Agreement or otherwise." CSA § 4.1. Landis was given the option to record in-studio or remote, and he elected to record in studio. RSGD 18. Lionbridge's involvement in the recording sessions was limited to scheduling the recording sessions during the dates and times when the Client needed the sessions completed and when Landis was available, confirming Landis' engagement, processing payment for Landis, and providing a recording engineer who made sure the recording equipment was functioning properly. *Id.* 19.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate where the movant has shown that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Entry of judgment is appropriate "if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "Material facts are those which may affect the outcome of the case." *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006); *In re Caneva*, 550 F.3d 755, 760 (9th Cir. 2008); *Anderson*, 477 U.S. at 248. "A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party." *Long*, 442 F.3d at 1185; *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record], which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:24-cv-07494-MRA-MAR | Date | July 29, 2025 |
|---|---|---|---|
| Title | *Corey Landis v. Lionbridge Technologies, LLC, et al.* | | |

Where the moving party does not bear the burden of proof at trial, it need only show that "there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Once the moving party has met this initial burden, Rule 56(c) requires the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324; *Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010) (en banc). The court must grant summary judgment for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

"[I]n ruling on a motion for summary judgment, the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999) (quoting *Anderson*, 477 U.S. at 255); *Groh v. Ramirez*, 540 U.S. 551, 562 (2004). A plaintiff's claims do not survive summary judgment, however, where merely a "scintilla of evidence" supports them. *Anderson*, 477 U.S. at 252. Rather, "there must be evidence on which the [fact finder] could reasonably find for the plaintiff." *Id.*; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (requiring more than a "metaphysical doubt" to establish a genuine dispute of material fact).

### III. DISCUSSION

#### A. Evidentiary Objections

##### 1. *Plaintiff's Declaration*

Defendant objects to several statements made by Plaintiff in his declaration because they contradict his prior testimony. ECF 33 (Def.'s Objs.). Notably, Plaintiff offers no response to these objections. "The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012) (quoting *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009)). "This sham affidavit rule prevents 'a party who has been examined at length on deposition' from 'rais[ing] an issue of fact simply by submitting an affidavit contradicting his own prior testimony,' which 'would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.'" *Id.* (quoting *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991)).

The Court finds that Landis impermissibly attempts to create a dispute of fact through statements in his declaration that contradict his deposition testimony. In his declaration, Landis implies that (1) he was told what to do every step of the way during his recording session, (2) he

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:24-cv-07494-MRA-MAR | Date | July 29, 2025 |
|---|---|---|---|
| Title | *Corey Landis v. Lionbridge Technologies, LLC, et al.* | | |

was not skilled as a voice-over actor or that his role as Welt did not require skill, and (3) he has no opinion on whether he was employed by Lionbridge. *See* Def.'s Objs. 1, 4, 6 (citing ECF 25 (Landis Decl.) ¶¶ 6, 8, 10). Yet during his deposition, Landis acknowledged that he interpreted emotions in the script and used them in his performance, that he had extensive training as a voice-over actor and was skilled in character voice and accents, and that he did not consider himself to be an employee of Lionbridge. *Id.* (citing ECF 23-3 (Weber Decl.) ¶ 2, Ex. 5 (Landis Depo.) at 38:20-39:07, 69:22-70:10, 128:08-10, 162:08-18). Landis also states in his declaration that he was not given the option to perform services at his home studio. Landis Decl. ¶ 9. But this testimony is contradicted by documentary evidence, namely an email in which Lionbridge personnel asked Landis if he would record "in-studio or remote" to which Landis responded electing to record in-studio. Weber Decl. ¶ 9, Ex. 12.

Accordingly, the Court **SUSTAINS** Defendant's Objections to Plaintiff's declaration.

### 2. *Plaintiff's Request for Judicial Notice*

Plaintiff requests that the Court take judicial notice of (1) the dictionary definitions for "recording artist" and (2) various undated screenshots on Lionbridge's website purportedly showing that Lionbridge publicly announces and markets its business offerings to include voice-over acting services. ECF 27. Defendant opposes for four reasons: (1) Plaintiff has not laid any foundation for those statements, such as who created the screenshots or when the websites were visited; (2) those statements are irrelevant to the merits, *i.e.*, what constitutes Lionbridge's usual course of business; (3) it is improper to take judicial notice of a private website, as opposed to a government one; and (4) Plaintiff's screenshots represent only a few cherry-picked portions of Lionbridge's website and therefore do not reflect a complete picture of how Lionbridge presents itself to the public. ECF 36. Defendant does not oppose Plaintiff's request that the Court take judicial notice of the dictionary definitions.

Federal Rule of Evidence 201 "permits a court to notice an adjudicative fact if it is 'not subject to reasonable dispute.'" *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (quoting Fed. R. Evid. 201(b)). "A fact is 'not subject to reasonable dispute' if it is 'generally known,' or 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.'" *Id.* (quoting Fed. R. Evid. 201(b)(1)-(2)).

The screenshots of the Lionbridge website are not subject to judicial notice. Defendant cites the Court's prior decision in *Gray v. Luxottica of Am., Inc.*, in which the Court declined to take judicial notice of screenshots of Defendant's website because they were undated and "not sufficiently authenticated as accurate reflections of the live version of the website during the limitations period." No. 8:24-cv-00160-MRA-DFM, 2024 WL 5689566, at *1 n.2 (C.D. Cal.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:24-cv-07494-MRA-MAR | Date | July 29, 2025 |
|---|---|---|---|
| Title | *Corey Landis v. Lionbridge Technologies, LLC, et al.* | | |

Dec. 16, 2024). As in *Gray*, Plaintiff does not establish when the screenshots were taken and thus whether the screenshots accurately represent Lionbridge's website during the February 2022 to August 2023 period relevant to this case. Based off the date stamps on the screenshots, it appears the screen was captured on May 25 and 26, 2025, which is nearly two years *after* the relevant time period. Moreover, it is improper to take judicial notice of a fact "simply because it appears on a publicly available website, regardless of who maintains the website or the purpose of the document" reflecting the fact. *Rollins v. Dignity Health*, 338 F. Supp. 3d 1025, 1032 (N.D. Cal. 2018). The Court, however, finds that the dictionary definitions of "recording artist" are subject to judicial notice because they are not subject to any reasonable dispute.

Accordingly, Defendant's Request for Judicial Notice is **DENIED** as to the screenshots and **GRANTED** as to the dictionary definitions.

### *3.    Hays and Whiting Declarations*

Plaintiff primarily objects to certain statements made in the declarations of Thomas Hays, Senior Director of Lionbridge's North American Audio division, and of Mathew Whiting, Senior Vice President of Operations for the Lionbridge Games division, on the grounds that those statements either reflect legal conclusions or are not based on their personal knowledge. ECF 30. Defendant responds that Hays and Whiting both clearly set forth the bases for their personal knowledge and that their statements are not legal conclusions. ECF 34.

Under the Federal Rules of Evidence, "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Fed. R. Evid. 602. "Evidence to prove personal knowledge may consist of the witness's own testimony." *Id.* "Personal knowledge may be inferred from a declarant's position." *In re Kaypro*, 218 F.3d 1070, 1075 (9th Cir. 2000). Lack of personal knowledge makes the witness incompetent to testify about particular facts. *See* Fed. R. Evid. 601. "[T]he requirement of personal knowledge imposes only a 'minimal' burden on a witness; if 'reasonable persons could differ as to whether the witness had an adequate opportunity to observe, the witness's testimony is admissible.'" *Strong v. Valdez Fine Foods*, 724 F.3d 1042, 1045 (9th Cir. 2013) (citation omitted). Moreover, a witness may not testify to legal conclusions. *United States v. Crawford*, 239 F.3d 1086, 1090 (9th Cir. 2011).

The Court finds that Hays and Whiting provide sufficient evidence of their personal knowledge for most of the challenged testimony. Both testify that they hold senior positions at Lionbridge and oversaw the *Honkai* project on which Landis provided services. As Senior Director of North American Audio, Hays is responsible for Lionbridge's audio productions, has access to Lionbridge's business records, and personal knowledge of Landis' voice-acting work on

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:24-cv-07494-MRA-MAR | Date | July 29, 2025 |
|---|---|---|---|
| Title | *Corey Landis v. Lionbridge Technologies, LLC, et al.* | | |

the *Honkai* project. ECF 23-2 (Hays Decl.) ¶¶ 2-4. Whiting testifies that as Senior Vice President of Operations, he is "ultimately responsible for the work performance of Mr. Hays and his team, including their involvement with voice-over actors, and their engagement with voice actors" such as Landis. ECF 23-4 (Whiting Decl.) ¶ 2. He also has access to Lionbridge's business records, including the records related to Landis' recording sessions on the *Honkai* project, and he reviewed those records and has personal knowledge of their contents. *Id.* ¶ 3. On this showing, Hays and Whiting generally have personal knowledge of the facts they testify to. However, the Court agrees with Plaintiff that Hays does not lay a sufficient foundation for his personal knowledge of the fact that Landis recorded other voice-over sessions as Welt for the *Honkai* project at other studios. *See* Hays Decl. ¶¶ 9, 10. The Court further finds that the vast majority of statements made by Hays and Whiting are not legal conclusions. But Hays' statement that the individuals who directed Landis in his portrayal of Welt were not "employed" by Lionbridge is a legal conclusion about the employment classification of the directors. *See* Hays Decl. ¶ 7.

Plaintiff also objects to Whiting's declaration on the grounds that Defendant failed to disclose Whiting in its Rule 26(a) disclosure and therefore his testimony must be excluded under Rule 37(c)(1). Defendant responds that exclusion of Whiting's testimony would not serve justice and that its inadvertent error was harmless and therefore does not warrant exclusion. Rule 37(c)(1) provides that if a party fails to identify a witness as required by Rule 26(a), "the party is not allowed to use that information or witness to supply evidence on a motion . . . , unless the failure was substantially justified or is harmless." "A failure to disclose witness information is harmless 'if the other party was well aware of the identity of the undisclosed witness and the scope of their relevant knowledge[.]'" *PSM Holding Corp. v. Nat'l Farm Fin. Corp.*, No. CV0508891MMMFMOX, 2013 WL 12080306 (C.D. Cal. Oct. 8, 2013) (citation omitted). Here, Defendant's non-disclosure was harmless. Plaintiff was well aware of Whiting because he signed the verification of Lionbridge's April 1, 2025, responses to written discovery requests and Plaintiff deposed Whiting as Lionbridge's designated Rule 30(b)(6) witness on May 7, 2025. *See* ECF 34. Plaintiff does not present any evidence that he was prejudiced by the non-disclosure or that Defendant acted in bad faith. Thus, the omission was inadvertent and harmless.

Accordingly, the Court **OVERRULES** Plaintiff's Objections to the Hays and Whiting declarations in substantial part, except as to the few statements identified above.

    **B.**    **Plaintiff's Employment Classification**

Plaintiff alleges that he was employed by Defendant pursuant to "an employment agreement" for which Defendant agreed to pay Plaintiff wages at rates ranging from $500 to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | 2:24-cv-07494-MRA-MAR | Date | July 29, 2025 |
|---|---|---|---|
| Title | *Corey Landis v. Lionbridge Technologies, LLC, et al.* | | |

$1,000 per day. ECF 1 ¶¶ 8, 16, 24, 32, 40, 48, 56, 64, 72, 80, 88, 96, 104, 112, 120, 128, 136, 144. This case turns on whether Plaintiff was properly classified as an employee or independent contractor. California Labor Code § 203 provides: "If *an employer* willfully fails to pay . . . any *wages* of an *employee* who is discharged or who quits, the wages of the *employee* shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days." Cal. Lab. Code § 203 (emphasis added). In other words, Plaintiff is entitled to wait time penalties from Lionbridge only if an employer-employee relationship existed. California Labor Code § 2775(b)(1) sets forth the general test for classifying workers, known as the "ABC" test:

> A person providing labor or services for remuneration shall be considered an employee rather than an independent contractor unless the hiring entity demonstrates that all of the following conditions are satisfied: (A) The person is free from the control and direction of the hiring entity in connection with the performance of the work, both under the contract for the performance of the work and in fact; (B) The person performs work that is outside the usual course of the hiring entity's business; (C) The person is customarily engaged in an independently established trade, occupation, or business of the same nature as that involved in the work performed.

Cal. Lab. Code § 2775(b)(1).

California Labor Code § 2780(a), however, exempts from the ABC test "occupations in connection with creating, marketing, promoting, or distributing sound recordings or musical compositions." Cal. Lab. Code § 2780(a)(1). This includes: "(A) Recording artists . . . [and] (J) Any other individual engaged to render any creative, production, marketing, or independent music publicist services related primarily to the creation, marketing, promotion, or distribution of sound recordings or musical compositions." *Id.* § 2780(a)(1)(A), (J). The test set forth in the California Supreme Court's decision in *S.G. Borello & Sons, Inc. v. Dep't of Indus. Rels.* (*Borello*), 48 Cal. 3d 341 (1989), not the ABC test, applies in case of these exceptions.

### 1.  *"Recording Artist" or "Sound Recording" Exceptions to ABC Test*

Defendant argues that Landis' performance as a voice actor falls under the exceptions to the ABC test for "recording artists" and individuals who render services for sound recordings. ECF 23 at 14-15. Plaintiff responds that § 2780(a)(1) applies to the music industry, not voice-over actors. ECF 24 at 7-10.

Federal courts interpreting a state law look to the state's rules of statutory construction.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:24-cv-07494-MRA-MAR | Date | July 29, 2025 |
|---|---|---|---|
| Title | *Corey Landis v. Lionbridge Technologies, LLC, et al.* | | |

*Turnacliff v. Westly*, 546 F.3d 1113, 1117-18 (9th Cir. 2008) (citing *In re First T.D. & Inv., Inc.*, 253 F.3d 520, 527 (9th Cir. 2001)). Under California law, "the words of the statute provide the most reliable indication of legislative intent." *In re First T.D. & Inv.*, 253 F.3d at 527 (quoting *Pac. Gas & Elec. Co. v. Cnty. of Stanislaus*, 16 Cal. 4th 1143, 1152 (1997)). Under the canon against surplusage, California courts "generally must 'accord[] significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose,' and have warned that '[a] construction making some words surplusage is to be avoided.'" *People v. Valencia*, 3 Cal. 5th 347, 357 (2017) (quoting *Dyna-Med, Inc. v. Fair Emp. & Hous. Comm'n*, 43 Cal. 3d 1397, 1387 (1987)). But "[t]he words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible." *Dyna-Med*, 43 Cal. 3d at 1387.

The "recording artists" exception does not apply to voice-over actors. "Recording artists" is not defined by the statute, but its ordinary, dictionary meaning is "a musician who records music in a studio and makes it available to the public." *Recording Artist*, Cambridge Dictionary, https://dictionary.cambridge.org/dictionary/english/recording-artist (last visited June 11, 2025); *see also Recording Artist*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/recording%20artist (last visited June 11, 2025) (defining "recording artist" as "a person who performs music for recordings"). This definition would appear to be surplus to another exception for "[m]usicians engaged in the creation of sound recordings." Cal. Lab. Code § 2780(a)(1)(F). However, "the canon against surplusage is [merely] a guide to statutory interpretation and is not invariably controlling." *Skidgel v. Cal. Unemployment. Ins. Appeals Bd.*, 12 Cal. 5th 1, 21 (2021). The plain ordinary meaning of "recording artists" does not encompass voice actors such as Landis because voice actors perform the voices of characters or narrators in motion pictures, not music recordings. *See Voice Actor*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/voice%20actor (last visited July 28, 2025); *Voice-overs*, Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/voice-over (last visited July 28, 2025).

The Court further finds that the "sound recordings" does not apply to voice-over actors. It is unmistakably clear from the occupations enumerated that § 2780(a)(1) applies to individuals in the music industry, including: "recording artists;" "songwriters, lyricists, composers, and proofers;" "managers of recording artists;" "record producers and directors;" "musical engineers and mixers . . . ;" "musicians engaged in the creation of sound recordings;" "vocalists;" "photographers working on recording photo shoots, album covers, and other press or publicity purposes;" and "independent radio promoters." Cal. Lab. Code § 2780(a)(1)(A)-(I). Under the canon of statutory construction known as *ejusdem generis*, "when a particular class of things

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:24-cv-07494-MRA-MAR | Date | July 29, 2025 |
|---|---|---|---|
| Title | *Corey Landis v. Lionbridge Technologies, LLC, et al.* | | |

modifies general words, those general words are construed as applying only to things of the same nature or class as those enumerated." *People v. Arias*, 45 Cal. 4th 169, 180 (2008) (citing *Scally v. Pac. Gas & Elec. Co.*, 23 Cal. App. 3d 806, 819 (1972)). This canon "applies whether the specific words follow general words in a statute or vice versa. In either event, the general term or category is restricted to those things that are similar to those which are enumerated specifically." *Id.* (citation and internal quotation marks omitted). Thus, the catch-all provision at section 2780(a)(1)(J)—"Any other individual engaged to render any creative, production, marketing, or independent music publicist services related primarily to the creation, marketing, promotion, or distribution of sound recordings or musical compositions"—is limited to those occupations of the same kind as the specific ones identified above, *i.e.*, professions in the music industry. Moreover, as Plaintiff notes, even if Plaintiff's voice-over work could be construed as "sound recording," his services did not relate "primarily" to their creation as required under section 2780(a)(1)(J), but rather to the development of a video game of which sound recording was but one component.

### 2. *ABC Test*

Defendant argues that even if the ABC test, not the *Borello* test, applies, the undisputed facts still establish that Plaintiff was properly classified as an independent contractor, not an employee. ECF 23 at 19-20. Plaintiff responds that Defendant cannot prove the first two elements of the ABC test and as such has failed to overcome the presumption that Plaintiff rendered services as Defendant's employee. ECF 24 at 10-19.

Under the ABC test, a worker is classified as an independent contractor, not an employee, if: "(A) [t]he person is free from the control and direction of the hiring entity in connection with the performance of the work, both under the contract for the performance of the work and in fact; (B) [t]he person performs work that is outside the usual course of the hiring entity's business; [and] (C) [t]he person is customarily engaged in an independently established trade, occupation, or business of the same nature as that involved in the work performed." Cal. Lab. Code § 2775(b)(1)(A)-(C). When applied to the facts of this case, the Court finds Plaintiff was properly classified as an independent contractor, not an employee, while engaged with Lionbridge as a voice-over actor.

*First*, Plaintiff was free from Defendant's control and direction in connection with the performance of his work. Lionbridge did not cast Landis to voice act as Welt and did not have authority to replace Landis.[3] RSGD 11, 12. Nor did Lionbridge control where Landis

---

[3] Plaintiff argues that under the CSA, Defendant "had the right to terminate Plaintiff's employment at any time, without cause." ECF 24 at 20. Not so. The termination provision in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 2:24-cv-07494-MRA-MAR | Date | July 29, 2025 |
|---|---|---|---|
| Title | *Corey Landis v. Lionbridge Technologies, LLC, et al.* | | |

performed his voice-over work. Although Lionbridge facilitated the scheduling of and technical logistics of the recording sessions, Lionbridge's Client determined when that work was needed, and Landis dictated his availability. *Id.* 24, 26. Lionbridge also did not exercise any control over the manner and means of his voice-over performance as Welt. *See id.* 11, 12, 16, 17. Lionbridge's Client selected and paid for the directors who directed Landis' performance. *Id.* 14, 15. Lionbridge did not provide the script, control the storyline, or dictate Landis' pronunciation, tonality, or emotion in his delivery. *Id.* 16, 17. Tellingly, the purported "employment contract" between Plaintiff and Defendant—the CSA—explicitly reflects Landis' agreement that he "controls and is responsible for the performance of all of the tasks comprising the Services." CSA § 4.1. Per the CSA, Landis agreed to be considered an independent contractor, not an employee. *Id.* In sum, as Plaintiff admits, Lionbridge was at best an "intermediary" between Landis and Lionbridge's Client. RSGD 30.

*Second*, Landis' voice-over work was outside of Lionbridge's usual course of business. The second factor in the ABC test "reflects the distinction between workers who are truly independent contractors and those whose work involves the hiring entity's usual course of business." *Vazquez v. Jan-Pro Franchising Int'l, Inc.*, 986 F.3d 1106, 1125 (9th Cir. 2021). Courts consider three frameworks when assessing this prong: (1) "whether the work of the employee is necessary to or merely incidental to that of the hiring entity;" (2) "whether the work of the employee is continuously performed for the hiring entity;" and (3) "what business the hiring entity proclaims to be in." *Id.* (collecting cases). Lionbridge's usual, core business involves providing translation and localization services, not recording studios for its clients' use. RSGD 1. Landis' work did not involve any translation or localization. *Id.* 21. Indeed, Lionbridge was not involved with any writing or translating of the script used by Landis. *Id.* 13. Moreover, Lionbridge does not employ voice-over actors in its business. *Id.* 2. The California Supreme Court's decision in *Dynamex Operations West, Inc. v. Superior Court*, upon which the ABC test is based, provides an instructive juxtaposition:

> [O]n the one hand, when a retail store hires an outside plumber to repair a leak in a bathroom on its premises or hires an outside electrician to install a new electrical line, the services of the plumber or electrician are not part of the store's usual course of business and the store would not reasonably be seen as having suffered or permitted the plumber or electrician to provide services to it as an employee. On

---

the CSA provides that "Lionbridge may terminate this Agreement . . . at any time on written notice to Supplier; provided Lionbridge will pay Supplier for all Services properly performed as of the termination date." CSA § 8. That Lionbridge had the ability to terminate the CSA does not mean that it had the right to discharge Landis at will from the *Honkai* project.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | 2:24-cv-07494-MRA-MAR | Date | July 29, 2025 |
|---|---|---|---|
| Title | *Corey Landis v. Lionbridge Technologies, LLC, et al.* | | |

the other hand, when a clothing manufacturing company hires work-at-home seamstresses to make dresses from cloth and patterns supplied by the company that will thereafter be sold by the company, or when a bakery hires cake decorators to work on a regular basis on its custom-designed cakes, the workers are part of the hiring entity's usual business operation and the hiring business can reasonably be viewed as having suffered or permitted the workers to provide services as employees.

4 Cal. 5th 903, 959-60 (2018) (internal citations omitted). Here, Landis' engagement with Lionbridge falls into the former category; the undisputed facts do not permit the conclusion that Landis was part of Lionbridge's usual business operations, and that Lionbridge permitted Landis to provide services as an employee.

*Lastly*, there is no dispute that Landis was involved in an independently established acting career. RSGD 10. During the period Landis was engaged for voice-over work as Welt, he worked 35-45 acting gigs per year. *Id.* 8.

In sum, the ABC test, when applied to the undisputed facts of this case, clearly demonstrate that Plaintiff was properly classified as an independent contractor, not an employee. Plaintiff therefore does not have a cognizable claim under California Labor Code § 203.

### IV.   CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is **GRANTED**. Accordingly, the Court **ORDERS** as follows:

1. This action is **DISMISSED** with prejudice. Any pending stipulations or motions are hereby **DISMISSED** as moot and all pretrial dates and deadlines are hereby **VACATED**.

2. Judgment is entered against Plaintiff and in favor of Defendant.

3. The Clerk shall treat this Order as an entry of final judgment.

**IT IS SO ORDERED.**

Initials of Deputy Clerk   mku